E-FILED
Friday, 02 December, 2005  02:42:24 PM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**CENTRAL** DISTRICT OF **ILLINOIS**

UNITED STATES OF AMERICA

v.

DENNIS HOLLIMAN

(Name and Address of Defendant)

FILED

DEC - 2 2005

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

## CRIMINAL COMPLAINT

CASE NUMBER: 05-7238

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about December 2004 to December 2005 in Champaign county, in the Central District of Illinois defendant(s) did, (Track Statutory Language of Offense) conpsire to distribute cocaine, a Schedule II Controlled Substance,

in violation of Title 21 United States Code, Section(s) 846 and 841(a)(1).

I further state that I am a(n) DEA Task Force Agent and that this complaint is based on the following
Official Title
facts:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof:    ☐ Yes    ☐ No

s/ Jack B. Turner
Signature of Complainant

Sworn to before me and subscribed in my presence,

12-02-2005                                            at                    Urbana, Illinois
Date                                                                        City and State

David G. Bernthal                                     s/ David G. Bernthal
United States Magistrate Judge
Name & Title of Judicial Officer                      Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## **AFFIDAVIT**

I, Jack B. Turner, being first duly sworn, hereby state:

1. I am an Officer with the Champaign Police Department (CPD) and am currently assigned to the Drug Enforcement Administration Task Force, attached to the DEA Springfield, Illinois Field Office; a multi-jurisdictional drug task force. I have been with CPD for approximately 10 years and with DEA Task Force since October of 2004.

2. This affidavit is made in support of a criminal complaint charging DENNIS HOLLIMAN (hereinafter "HOLLIMAN") with conspiracy to distribute cocaine, a Schedule II Controlled Substance.

3. This investigation commenced in November 2005. On November 16, 2005, members of the DEA Springfield Resident Office and the Champaign Police Department arrested an individual who was in possession of approximately 422 grams of cocaine and approximately 84 grams of cocaine base ("crack"). That individual (hereinafter CS#1), provided law enforcement agents with written consent to search his/her residence. During the search of CS#1's residence, agents located and seized, among other things, approximately 1,600 grams of cocaine, approximately 80 grams of cocaine base, and numerous packages consistent with the packaging of kilogram quantities of cocaine, which contained cocaine residue.

4. CS#1 agreed to cooperate with the government, and was debriefed by law enforcement agents on November 21, 2005. Agents began the debriefing by asking CS#1 about his/her source of supply for the cocaine that was in his/her possession. CS#1 stated that he/she had obtained two kilograms of cocaine from an individual known as "D". CS#1 identified HOLLIMAN as "D" after being shown an Illinois driver's license photograph of HOLLIMAN (the photograph did not bear any identifying information other than HOLLIMAN's photograph). CS#1 stated that he obtained the cocaine from HOLLIMAN on either November 13 or 14, 2005, at HOLLIMAN's auto garage, known to CS#1 as "Homan Auto Service," located on Homan Avenue in Chicago. CS#1 further stated that HOLLIMAN sold him/her one kilogram of "good" cocaine and one kilogram of "bad" cocaine. CS#1 explained that the "bad" cocaine that HOLLIMAN was selling was for a cheaper price. CS#1 further stated that he/she owed HOLLIMAN approximately $42,500 for those two kilograms and from a prior drug debt of approximately $3,000.

5. When asked about his/her prior dealings with HOLLIMAN, CS#1 explained that he/she had known HOLLIMAN since about early 2000 and that he/she began obtaining cocaine from HOLLIMAN in about 2003. CS#1 stated that he/she first obtained cocaine from HOLLIMAN in multiple-ounce quantities, and then after a couple of cocaine transactions, he/she started obtaining larger quantities of cocaine from HOLLIMAN. CS#1 stated that

HOLLIMAN would usually front him/her the cocaine and that CS#1 would pay HOLLIMAN for the cocaine at the time of their next drug transaction. CS#1 further stated that he/she had been consistently obtaining about 1-2 kilograms of cocaine from HOLLIMAN every two weeks, an average of approximately five kilograms per month, every month for about the past year, which CS#1 distributed in Champaign County, Illinois.

6. CS #1 stated that he/she always picked up the cocaine from HOLLIMAN on the premises of Homan Auto Service. CS#1 further stated that he/she usually met with HOLLIMAN during the day, when the business was open. CS#1 would first pull his/her vehicle into a service bay, and then HOLLIMAN would close the doors and the gates of the fence surrounding the business, and they would then conduct their drug transaction. CS#1 further stated that at different times he/she observed HOLLIMAN retrieve cocaine from different locations on the property, including from the inside of a soda machine and from a file cabinet located in a back room of the business. CS#1 further stated that he/she was present when other unknown individuals appeared to be obtaining drugs from HOLLIMAN. CS#1 further stated that HOLLIMAN appeared to do only a limited amount of legitimate mechanic work at the auto garage.

7. On November 29, 2005, law enforcement agents again met with CS#1 in Champaign, Illinois. CS#1 stated that during the time he/she had been dealing

3

with HOLLIMAN, HOLLIMAN changed his telephone number at least 2-3 different times. CS#1 stated that he/she was currently calling HOLLIMAN at telephone number 773-908-0122. (According to records of Nextel, that telephone number is registered to Homan Auto Sales, 1061 N. Homan Avenue, Chicago, Illinois, in the name of HOLLIMAN.) CS#1 could not recall HOLLIMAN's previous telephone numbers, but he/she was certain that HOLLIMAN's prior telephone numbers also had an area code of 773 and a prefix of 908. CS#1 stated that he/she had received a telephone call from HOLLIMAN two days earlier, on November 27, 2005, during which HOLLIMAN asked CS#1, when he/she would be coming to Chicago to pay him for the cocaine that he had previously provided to CS#1, and to take possession of more cocaine. CS#1 stated that he/she told HOLLIMAN that he/she would travel to Chicago sometime later in the week.

8. During this same meeting with CS#1 on November 29, 2005, agents showed him/her recent photographs of Homan Auto Service, 1061 N. Homan Avenue, Chicago, Illinois. CS#1 identified Homan Auto Service as the location where he/she would meet with HOLLIMAN to conduct cocaine transactions. During the photographs, CS#1 showed the agents which door was always used by CS#1 to enter the garage to conduct drug transactions. CS#1 also provided agents with a layout of the inside of the garage. CS#1 told agents that he/she observed HOLLIMAN at times retrieve cocaine from other vehicles which were parked in the garage. CS#1 stated that at the time of their last drug transaction,

4

HOLLIMAN retrieved two kilograms of cocaine from a van parked inside the garage.

9. Under the supervision of the agents, CS#1 placed a telephone call to HOLLIMAN on November 29, 2005, dialing telephone number 773-908-0122. The call was answered by an individual whom CS#1 subsequently identified as HOLLIMAN. The following is a non-verbatim summary of CS#1's conversation with HOLLIMAN, which was recorded:

After CS#1 said hello and HOLLIMAN responded "what's up dude?" CS#1 asked if he (HOLLIMAN) tried to call him/her last night, and HOLLIMAN acknowledged. CS#1 said that he/she would probably come by Thursday (12/1) or Friday (12/2). HOLLIMAN told CS#1 that he (HOLLIMAN) would be around. CS#1 then indicated that he/she looked at the "address" of the "duplex" (coded language for his/her drug debt to HOLLIMAN), and the address was wrong. CS#1 said "remember I told you it was 42nd Street", (meaning a $42,000 debt), and then added that it was "42nd fifty" (meaning $42,500). HOLLIMAN said okay. CS#1 concluded the conversation by stating he/she could call HOLLIMAN back when he/she was on the way (to meet with HOLLIMAN), and HOLLIMAN said okay.

5

10. The following day, on November 30, 2005, DEA agents from the Chicago Field Division Office conducted surveillance of Homan Auto Service, and observed HOLLIMAN at the business. HOLLIMAN departed the premises in a green van (consistent with information previously provided by CS#1 that he/she believed that HOLLIMAN drove a green minivan). The agents noted the license plate number of the van, and subsequently determined that the license plate number was registered to HOLLIMAN at his home address in Bellwood, Illinois.

11. On December 1, 2005, at approximately 11:20 a.m., CS#1 called HOLLIMAN from Champaign, Illinois, under the supervision of law enforcement agents. CS#1 called HOLLIMAN to arrange a time to meet with him to pay his outstanding drug debt and to pick up two more kilograms of cocaine. During that conversation, which was recorded, CS#1 and HOLLIMAN talked about a drug transaction in coded language. CS#1 asked HOLLIMAN about "race car engines" (meaning kilograms of cocaine), stating that he/she wanted one "discount motor" and one "regular supercharged motor" (meaning two kilograms of cocaine total). HOLLIMAN responded that he needed to make a phone call. CS#1 then asked HOLLIMAN what "flavor" it (the cocaine) would be, and HOLLIMAN said that he didn't know, but that he would show it to CS#1 when CS#1 arrived (at Homan Auto Service). CS#1 concluded the conversation

6

by indicating that he would be leaving in a few minutes and that he/she would call HOLLIMAN when he was about 35 minutes away. HOLLIMAN said okay.

12. On December 1, 2005, at approximately 4:00 p.m., officers executed a federal search warrant at HOLLIMAN's business, namely, Homan Auto Service, 1061 N. Homan Avenue, Chicago, Illinois. HOLLIMAN was located inside the business and was detained while officers conducted the search. A Cook County K-9 unit was called to the scene and the dog alerted on a soda machine located in the office area of the business. Officers retrieved the key to the soda machine from HOLLIMAN and opened the door, locating two packages of powder cocaine containing approximately 1,006 grams. Also located inside the soda machine was a package containing approximately 190 grams of crack cocaine. These items were later field tested and gave positive indications for the presence of cocaine.

13. In a storage area just outside the office, officers located two file cabinets which contained Pyrex cookware and several digital scales, all of which contained suspected cocaine residue. Also in the same file cabinet, officers recovered two loaded semi-automatic firearms. Also located in the storage area was a microwave which contained suspected crack cocaine residue.

14. Officers searched a vehicle located in the bay area of the business and located five packages wrapped consistent with kilogram quantities of cocaine.

Further, Affiant sayeth not.

s/ Jack B. Turner
_____
JACK B. TURNER
DEA Task Force Agent

Subscribed and sworn to before me this
2nd day of December 2005.

s/ David G. Bernthal
_____
DAVID G. BERNTHAL
United States Magistrate Judge